```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
LAURENCE CAPPELLI,                                               :
                                                                 :
                                        Plaintiff,               :   1:13-cv-3481-GHW
                                                                 :
                        -v-                                      :   MEMORANDUM OPINION
                                                                 :           AND ORDER
JACK RESNICK & SONS, INC and BROADWAY                            :
& 56TH STREET ASSOCIATES,                                        :
                                                                 :
                                        Defendants.              :
                                                                 :
---------------------------------------------------------------- X
```

GREGORY H. WOODS, United States District Judge:

Laurence Cappelli was the superintendent of a large, multi-unit apartment building in midtown Manhattan. Two of his colleagues made unprofessional, sexual comments and gestures to each other in Mr. Cappelli's presence, which offended him. Mr. Cappelli contends that the defendants subjected him to a hostile work environment because his colleagues' behavior made him, an older man, uncomfortable. But, while his colleagues' behavior was inappropriate, the federal discrimination laws do not "set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Because Mr. Cappelli has failed to demonstrate that his colleagues' acts were discriminatory, and for the other reasons described below, the Court grants the defendants' motion for summary judgment with respect to Mr. Cappelli's federal and New York state law claims, and declines supplemental jurisdiction over his remaining claims.

**I.     Factual Background**[1]

The defendants, Broadway & 56th Street Associates, L.P ("Broadway Associates") and Jack Resnick & Sons, Inc. ("Resnick"), own and manage the "Symphony House," an apartment building at 235 West 56th Street in New York City, New York. Mr. Cappelli started work at the Symphony House as its resident manager and building superintendent on October 19, 2009 at the age of fifty-four. Declaration of Stephanie Smith, Dkt. No. 86 ("Smith Decl."), Ex. V. Shortly after he began working at Symphony House, Mr. Cappelli observed two of his colleagues—Barbara Elliott and Ibrahim "Brian" Paljevic—engaging in behavior that he found to be offensive. Defendants' Statement of Undisputed Facts, Dkt. No. 91 ("Defs. SOF") ¶¶ 30-33; Declaration of Harry Weinberg, Dkt. No. 87 ("Weinberg Decl."), Ex. D, Laurence Cappelli Deposition ("Cappelli Dep.") 37:14-38:10. That conduct is the basis for Mr. Cappelli's gender discrimination claims.

Ms. Elliott was Symphony House's on-site agent. Smith Decl., Ex. V; Declaration of Robert Jacovetti, Dkt. No. 92 ("Jacovetti Decl."), Ex. 3, Barbara Elliott Deposition ("Elliott Dep.") 7:7. When Mr. Cappelli began working at Symphony, Ms. Elliott was nearly 65 years old; she had been working as the building's on-site agent since 1987. *Id.* at 7:10-17, 23:20-25, 24:1. Mr. Cappelli did not report to Ms. Elliott, although, in her role as on-site agent, she did pass on projects for him to perform, and once she attempted to discipline Mr. Cappelli. *Id.* at 42:22-25, 43:1-44:24. Mr. Paljevic was the assistant superintendent for the building and reported directly to Mr. Cappelli. Defs. SOF ¶ 36. Mr. Paljevic was 45 in 2009, when the plaintiff first saw him cavorting with the 64 year old Ms. Elliott. Jacovetti Decl., Ex. 1, Ibrahim Paljevic Deposition ("Paljevic Dep.") 11:22-24.

In a February 3, 2012 email sent to Stephanie Smith, his employer's human resources director, Mr. Cappelli summarized his experiences as follows:

---

[1] The following facts are not disputed for purposes of this motion, or are taken in the light most favorable to Mr. Cappelli.

> I have been the victim of sexual harassment that has been performed by the On Site Managing Agent Ms. Barbara Elliot [sic] and my assistant Mr. Ibrahim Paljevic. This sexual conduct during working hours occurs on a regular basis. Usually in the 43rd floor management office as well as other areas on the building. This behavior has been witness [sic] by various other employees and is the cause of much disruption here in the building. This conduct can happen anywhere inside or outside the building . . . . The sexual innuendo, touching and performances by these two individuals causes me much distress, anguish and embarrassment as Ms. Elliott sustains and encourages this behavior with a subordinate too [sic] her and I. This cause [sic] me to be ineffective in managing my assistant.

Jacovetti Decl., Ex. 4 at 3; Smith Decl., Ex. P.

Mr. Cappelli expanded on his observations of the offensive behavior of Ms. Elliott and Mr. Paljevic at his deposition. He testified that the pair made statements that were "embarrassing and improper." Cappelli Dep. 39:3-7. Specifically, according to Mr. Cappelli:

> They would engage in this sexual talk and descriptive talk about sex acts and things they were going to do to each other in my presence. . . . They would grind each other's crotch and say you have your thongy thong, okay honey, we are going to do it tonight. We are getting it on. Those are the type of statements that were said multiple times in front of myself and in front of other people.

Cappelli Dep. 40:4-9. As described in the February 3 letter emailed to Ms. Smith, Mr. Cappelli testified that he saw the pair engage in this behavior in Ms. Elliott's office and other places. Cappelli Dep. 41:5-42:5. Mr. Cappelli found the frisky, public romps of Ms. Elliott and Mr. Paljevic to be very "unbusinesslike." Cappelli Dep. 52:7.

In November 2009, Mr. Cappelli reached out to Gary Kossen, one of his supervisors, to complain, telling him that "it is very uncomfortable to try to direct Brian [Mr. Paljevic] while we have Barbara [Ms. Elliott] interceding on his behalf and giving him information about what is going on with the operation." Cappelli Dep. 52:7-11. In response, Mr. Kossen told Mr. Cappelli that Ms. Elliott's and Mr. Paljevic's behavior was "just a little friendly office play," and declined to address the issue further. Cappelli Dep. 52:23-24, 53:18-20.

It was not until later that Mr. Cappelli arrived at the conclusion that the improper behavior that he was observing in his workplace made him a victim of a violation of federal laws. He came to

3

that realization in the summer of 2010, when, after a presentation on "all the different scenarios" regarding sexual harassment, Mr. Cappelli said to himself "oh, that is going on here at Resnick . . . ." *Id.* at 59:9-23.

Here, a short flashback in the story is necessary—to a time before Mr. Cappelli's arrival at Symphony House. Mr. Cappelli never saw either Ms. Elliott or Mr. Paljevic engage in sexual behavior with anyone else on staff or in the building. Cappelli Dep. 52:13-20. But in his opposition, he pointed to allegations of sexual harassment by Mr. Paljevic of Christopher Elter, a former doorman at Symphony House. Plaintiff's Opposition, Dkt. No. 94 ("Opposition") at 9. For that reason, the Court reviews the record regarding those events.

Mr. Elter was sexually harassed by Mr. Paljevic. Jacovetti Decl., Ex. 2, Christopher Elter Deposition ("Elter Dep.") at 11:2-12:12; Jacovetti Decl., Ex. 9 at 10-11. Mr. Elter described Mr. Paljevic "horsing around" with him in a sexual manner—"basically just kind of grabbing me and stuff and playing around and it wasn't appropriate. But that was just Brian and me." *Id.* at 18:9-12; 11:18-20. Mr. Elter complained to management, and, in February and March 2012, his employer conducted an investigation of the claim. Jacovetti Decl., Ex. 9. According to Mr. Elter, as a result of the complaint, company management sat together with him and Mr. Paljevic "and discussed it and agreed that it was inappropriate and we all agreed that it would not occur again and that was it and we went back to work." Elter Dep. 13:10-13.

Mr. Cappelli did not witness Mr. Elter's mistreatment by Mr. Paljevic. Cappelli Dep. 52:16-18. Mr. Cappelli learned of it sometime later. Mr. Elter testified that he complained to Ms. Smith, the human resources officer, when Mr. Cappelli raised the subject with him: "I don't know how he acquired that knowledge. When [Mr. Paljevic] called me and mentioned to me about Brian shoving a broom stick in my ass and I called [Ms. Smith] up right away, I said, look, this man [Mr. Cappelli] shouldn't be speaking to me like this." Elter Dep. 23:20-24. Mr. Elter testified that he believed that

4

Mr. Cappelli had been fired as a result of his complaint to Ms. Smith regarding Mr. Cappelli's comments. *Id.* at 24:3-17 ("I believe he was terminated for several reasons other than that one, but that was the straw that broke the camel's back.")

Indeed, in the fall and winter of 2011—more than two years after Mr. Cappelli started working at Symphony House—multiple employees and tenants submitted a number of complaints about Mr. Cappelli to the building's management. On September 11, 2011, one of Mr. Cappelli's subordinates complained in an incident report that Mr. Cappelli had falsely claimed to have lent him money. Defs. SOF ¶ 3; Smith Decl., Ex. D.

Three days later, Mr. Cappelli was involved in an altercation with a tenant as they were both driving out of the building's garage—one that carried on to the street outside. Defs. SOF ¶ 4; Smith Decl., Ex. E. Both Mr. Cappelli and the tenant submitted complaints about the event. Smith Decl., Exs. E, H; Defs. SOF ¶ 7. Resnick's human resources director, Ms. Smith, gave Mr. Cappelli a written disciplinary warning for his role in the altercation, explaining to him that "[w]hile the incident with [the tenant] may have been provoked, you had a duty to avoid responding in a way that escalated the situation and made it worse." Smith Decl., Ex. I; Defs. SOF ¶ 8.

On September 30, 2011, Resnick received a letter from another tenant, who claimed that he was seeking early termination of his lease because Mr. Cappelli had discriminated against his child's nanny by making her take the service elevator. Defs. SOF ¶ 9; Smith Decl., Ex. F. On November 23, 2011, Resnick received a complaint that Mr. Cappelli had thrown papers at another employee at the concierge desk. Defs. SOF ¶ 10; Smith Decl., Ex. J.

In addition, as noted above, Mr. Elter—who, by the time of his deposition, had become the union's shop steward—testified that he had complained to Ms. Smith about the "temperamental" comments that Mr. Cappelli made to him. Elter Dep. 25:16-17. Mr. Elter also testified regarding "things [Mr. Cappelli] would say that were like kind of off the wall, off peak." *Id.* at 29:11-13. And

Mr. Elter described other incidents that he believed were the basis for Mr. Cappelli's termination. *Id.* at 18-24; 41:4-16 ("I know that he did flood the 9th floor and burst the pipe into the garage. . . . There was a time that he walked into the apartment of a tenant when there was no permission to enter. I think that the woman was upset because she was in the shower." "He crashed into another tenant's Mercedes Benz with his car. And the tenant was upset.")

On January 5, 2012, Mr. Kossen prepared Mr. Cappelli's annual performance review. Defs. SOF ¶ 11; Smith Decl., Ex. K. Although Mr. Kossen gave Mr. Cappelli ratings of average or above average on the majority of the performance markers, he assigned Mr. Cappelli below average ratings in the "Courtesy" and "Stability" categories, noting that Mr. Cappelli "needs to be less aggressive when dealing with tenants and employers, tends to be overpowering" and "does not maintain a calm demeanor, appears to overreact." Defs. SOF ¶ 11; Smith Decl., Ex. K. Mr. Kossen discussed his review with Mr. Cappelli on January 31, 2012. Defs. SOF ¶ 11; Smith Decl., Ex. K. On February 2 and February 3, 2012, Ms. Smith interviewed potential candidates to replace Mr. Cappelli. Defs. SOF ¶ 16; Smith Decl., Exs. L, N-O.

On February 3, 2012, Mr. Cappelli sent the email to Ms. Smith excerpted above, which informed her of Ms. Elliott's and Mr. Paljevic's actions, and Mr. Kossen's unwillingness to address the issue. Defs. SOF ¶ 17; Smith Decl., Ex. P. Ms. Smith told Mr. Cappelli that the company would promptly investigate his complaint. Jacovetti Decl., Ex. 4. In a letter dated February 16, 2012, Ms. Smith wrote to Mr. Cappelli that she had conducted an investigation and found no evidence of pervasive or intentional sexual harassment directed at Mr. Cappelli by Ms. Elliott or Mr. Paljevic. Smith Decl., Ex. R. However, as Ms. Smith advised Mr. Cappelli, she "reminded both [Mr. Paljevic] and [Ms. Elliott] of the Company's policy on professional and appropriate conduct in the workplace." *Id.* In a letter dated February 16, 2012, Ms. Smith wrote Mr. Paljevic that "I have concluded that you and Ms. Elliott may have conducted yourselves in a manner that is inappropriate

6

in the workplace." Jacovetti Decl., Ex. 9.  Ms. Smith went on to advise Mr. Paljevic that "your interpersonal communications should always be respectful, professional, and non-controversial. Further, physical contact with Ms. Elliott should be limited to only that which is customary between co-workers." *Id.*

On February 14, 2012, Mr. Cappelli filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), charging Resnick with discrimination on the basis of his sex and retaliation.  Smith Decl., Ex. S.  Ms. Smith received a copy of the charge on February 16, 2012. Smith Dep. at 42:8-11; Defs. SOF ¶ 20.  On February 29, 2012, Mr. Cappelli amended his EEOC charge, adding an additional claim of age discrimination.  Smith Decl., Ex. V.

Dennis Brady, Resnick's executive managing director of leasing, made the decision to terminate Mr. Cappelli sometime in mid-February 2012, around the same time that he first became aware of Mr. Cappelli's EEOC charge.  Weinberg Decl., Ex. C, Dennis Brady Deposition ("Brady Dep.") at 7:19-20; 100:21-101:11; Jacovetti Decl., Ex. 5, Gary Kossen Deposition ("Kossen Dep.") at 36:21-40:21.  Mr. Brady discharged Mr. Cappelli on March 2, 2012, explaining in a letter that the dismissal was "due to [his] failure to cooperate with [his] Employer."  Defs. SOF ¶ 22; Smith Decl., Ex. U.  Mr. Paljevic temporarily took over Mr. Cappelli's duties until the Symphony House hired Mr. Cappelli's permanent replacement.  Paljevic Dep. 48:3-5.

Mr. Cappelli, a member of Local 32BJ of the Service Employees International Union (the "Union"), filed a grievance with the Union alleging that he was terminated in violation of the collective bargaining agreement covering the terms and conditions of his employment.  Defs. SOF ¶ 25.  In an opinion and award dated July 5, 2012, an arbitrator ruled that Resnick had not violated the collective bargaining agreement when it terminated Mr. Cappelli.  *Id.* ¶ 26.  In the opinion, the arbitrator noted that Mr. Cappelli had "failed in his responsibility to cooperate" with the defendants, and was made aware of the defendants' dissatisfaction on a regular basis by senior management.  *Id.*

7

## II.     Procedural History

Mr. Cappelli commenced this action on May 23, 2014 against Resnick, the property manager of Symphony House, Broadway Associates, the owner of Symphony House, and the Union, alleging age and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*  Dkt. No. 1.

Mr. Cappelli filed an amended complaint on October 28, 2013.  Dkt. No. 24.  In his amended complaint, Mr. Cappelli alleges that the defendants:  (i) created a hostile work environment as a result of sexual harassment in violation of Title VII, the NYSHRL, and the NYCHRL; (ii) engaged in age discrimination in violation of the ADEA, the NYSHRL, and the NYCHRL; and (iii) retaliated against him in violation of the ADEA, Title VII, the NYSHRL, and the NYCHRL.  *Id.* at 5-11.

In November 2013, the defendants filed motions to dismiss the amended complaint arguing, among other things, that the Court did not have subject matter jurisdiction over Mr. Cappelli's Title VII and ADEA claims against the Union and Broadway Associates because Mr. Cappelli had failed to file an administrative charge with the EEOC against those two defendants, and that Mr. Cappelli had failed to allege any facts supporting his discrimination claims against the Union.  Dkt. Nos. 27, 29.  On August 22, 2015, the Court issued an opinion concluding that it had subject matter jurisdiction over the federal claims against Broadway Associates, but not the Union, and that Mr. Cappelli had failed adequately to plead a breach of the duty of fair representation.  Dkt. No. 57.  The Court dismissed the Union from the case.  *Id.*

Before the Court now is the remaining defendants' motion for summary judgment.  The

defendants argue that (i) Mr. Cappelli has failed to establish a claim of hostile work environment because, although he witnessed inappropriate behavior between his coworkers, he was not sexually harassed on account of his gender; and (ii) Mr. Cappelli has failed to establish a *prima facie* case for employment discrimination or retaliation, and in any event, that he has failed to demonstrate that the defendants' legitimate non-discriminatory and non-retaliatory reasons for Mr. Cappelli's termination were pretextual.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "[c]onclusory allegations, conjecture, and speculation, . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

### IV. Discussion

#### A. Hostile Work Environment under Title VII and the NYSHRL

Mr. Cappelli asserts hostile work environment claims against the defendants under Title VII and the NYSHRL. Title VII prohibits an employer from discriminating in "compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The NYSHRL similarly prohibits employers from firing or otherwise discriminating against an individual "because of an individual's age, race, creed, color, national origin, sexual orientation . . . ." N.Y. Exec. Law §§ 296(1)(a).

To establish a hostile work environment claim under Title VII, "a plaintiff must show 'that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).[2]

As the Second Circuit explained in *Littlejohn*:

> This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive. The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* (internal quotation marks and citations omitted).

Significantly, a plaintiff bringing a hostile work environment claim must also demonstrate that the hostile conduct at issue was carried out because of his gender. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). As the Supreme Court has clearly cautioned on multiple occasions, anti-discrimination statutes do not "set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted) (referring to Title VII); *accord Alfano v. Costello*, 294

---

[2] Title VII and NYSHRL claims are evaluated using the same standard. *Tolbert v. Smith*, 790 F.3d 427, 438-39 (2d Cir. 2015).

10

F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.").

The defendants argue, among other things, that Mr. Cappelli has failed to adduce any evidence to support a finding that there was a linkage between his colleagues' actions and Mr. Cappelli's gender.  Defendants' Brief ("Defs. Br."), Dkt. No. 88 at 6-7.  The defendants contend that Mr. Cappelli's "claim seems to rest upon the ill-founded belief that workplace sexual or romantic actions that happen to occur in his presence are actionable sexual harassment." *Id.* at 7.  The defendants are correct that such a legal theory is unsupported by the law.  As the Supreme Court has explained,

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat [ion]* . . . because of . . . sex.'  We have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations.  The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal quotation marks omitted) (emphasis in original).

Accordingly, Mr. Cappelli cannot defeat the defendants' summary judgment motion by simply proffering evidence that his co-workers engaged in sexually explicit activities in his presence.  Instead, Mr. Cappelli needs to present a genuine issue of fact as to whether the hostile conduct was carried about because of Mr. Cappelli's sex.  The record lacks any evidence to support such a finding.  According to Mr. Cappelli, Ms. Paljevic and Ms. Elliott engaged in their sexualized conduct not just in Mr. Cappelli's presence, but in the presence of others.  Mr. Cappelli simply does not offer

evidence that would support a finding that his colleagues' conduct was directed at him as a man, or even that it was particularly offensive to men, or intended to provoke Mr. Cappelli's reaction as a man. As Ms. Smith concluded, it was just inappropriate.

Lacking such evidence with respect to his personal interactions with his subordinate, Mr. Paljevic, Mr. Cappelli points, instead, to the evidence that Mr. Paljevic previously harassed Mr. Elter on the basis of Mr. Elter's sexual orientation. Opposition at 9. But, at a very basic level, Mr. Paljevic's harassment of Mr. Elter on the basis of Mr. Elter's gender or sexual orientation does not support the conclusion that Mr. Paljevic's ribald behavior with Ms. Elliott was directed at Mr. Cappelli on the basis of *his* gender. Mr. Cappelli cannot bring a claim of sexual harassment on behalf of Mr. Elter; Mr. Cappelli did not even witness Mr. Paljevic's interactions with Mr. Elter. Mr. Cappelli does not allege that Mr. Paljevic touched him sexually, or that Mr. Paljevic's behavior targeted him on the basis of his perceived gender or sexual orientation, as was the case with Mr. Elter.

Mr. Cappelli saw two colleagues engage in inappropriate behavior with sexual overtones, but there is no basis to conclude that the conduct was directed at him as a male. The evidence does not support Mr. Cappelli's argument that there was a linkage between the conduct at issue in this case and Mr. Cappelli's sex. Even if they were, the Court cannot conclude that the incidents described by Mr. Cappelli are sufficiently severe to support a claim for hostile work environment. While the conduct of Mr. Cappelli's colleagues was inappropriate, these anti-discrimination statutes do not dictate a general civility code for the Mr. Cappelli's workplace. The defendants' summary judgment motion is granted with respect to Mr. Cappelli's hostile work environment claims under Title VII and the NYSHRL.

### B. Age Discrimination Claims under the ADEA and the NYSHRL

Mr. Cappelli alleges that the defendants discriminated against him on the basis of his age in

violation of the ADEA and the NYSHRL.  Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The ADEA provides that individuals ages forty and above are members of the protected class.  *See* 29 U.S.C. § 631(a).  Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims brought under the ADEA.  *See Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 71 n. 2 (2d Cir. 2004) ("Since the [NYSHRL] mirrors the requirements of the ADEA, violation of one necessarily implies violation of the other."); *Brannigan v. Bd. of Educ. of Levittown Union Free Sch. Dist.*, 18 A.D.3d 787, 796 N.Y.S.2d 690, 692 (2005) ("The elements of an age discrimination claim under the New York State Human Rights Law and the ADEA are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes.").

Age discrimination claims brought under the ADEA and the NYSHRL are analyzed under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Tolbert*, 790 F.3d at 434 (NYSHRL); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (ADEA).  This framework places the initial burden of establishing a *prima facie* case of discrimination on the plaintiff, who must demonstrate that:  (1) he was within the protected age group; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination.  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).  If the plaintiff meets this initial burden, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* at 492.  If the employer does so, the presumption of discrimination raised by the *prima facie* case is rebutted, and the burden returns to the plaintiff to show that the employer's stated reasons are merely a pretext for

discrimination. *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). With respect to ADEA claims, "'a plaintiff bringing a disparate treatment claim pursuant to the ADEA' satisfies this burden by presenting facts, which 'taken in [his] favor, suffice to . . . [show that] a triable issue [exists] as to whether [his] age was a 'but for' cause of [his] termination.'" *John Delaney v. Bank of America Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)).[3]

In this case, it is undisputed that Mr. Cappelli, 56 years old at the time he was terminated, was a member of the protected class. It is also not disputed that Mr. Cappelli was qualified for his position as a resident manager, and that he suffered at least one adverse employment action when he was terminated.[4] The defendants argue, however, that Mr. Cappelli cannot establish that his termination occurred under circumstances giving rise to an inference of age discrimination. Defs. Br. at 5, 14. On this record, defendants may well be correct. Still, given that "[t]he burden of proof that must be met to establish a prima facie case is minimal," *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 199 (2d Cir. 1999), the Court will assume without holding that Mr. Cappelli has made a prima

---

[3] The Second Circuit has "assumed, without deciding, that the ADEA's 'but for' standard of causation also applies to age discrimination claims brought under the NYSHRL," noting that "New York courts have yet to rule definitively on this issue." *Mikinberg v. Bemis Co.*, 555 Fed. Appx. 34, 35 (2d Cir. 2014) (citing *DeKenipp v. State*, 97 A.D.3d 1068, 949 N.Y.S.2d 279, 281-282 (2012)); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 n. 6 (2d Cir. 2010) ("The law governing ADEA claims has been held to be identical to that governing claims made under the NY[S]HRL. Accordingly, we assume, without deciding, that the Supreme Court's Gross decision affects the scope of the NY[S]HRL law as well as the ADEA." (internal citations omitted)). The Court will follow the Second Circuit and other federal courts in this Circuit, and assume that the "but for" standard applies to Mr. Cappelli's NYSHRL age discrimination claim.

[4] An adverse employment action is an action that gives rise to "a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). It is unclear from Mr. Cappelli's opposition brief whether he intends to argue that the defendants took any other discriminatory adverse employment actions against him beyond his termination. In the factual background section of his brief, Mr. Cappelli outlines a series of actions that he believes the defendants took against him in addition to his termination. (For example, Mr. Cappelli argues at some length that although Symphony House investigated Mr. Paljevic and Ms. Elliott's behavior, the investigation was not as comprehensive as the investigation afforded to Mr. Elter when he complained of Mr. Paljevic's behavior. Opposition at 3-5.) However, Mr. Cappelli never argues that those actions materially changed the conditions of his employment. Unsurprisingly, there is no evidence on the record to support such an argument. Consequently, the Court limits its analysis to Mr. Cappelli's termination.

facie showing and go on to analyze the remaining factors under the *McDonnell Douglas* framework.

The defendants have presented several legitimate, non-discriminatory reasons for Mr. Cappelli's termination. The defendants argue that Mr. Cappelli was terminated because he failed to cooperate with Symphony House's management in the exercise of his duties, exercised poor judgment, failed to get along with residents and employees of the building, and generally had poor work performance. Defs. Br. at 17-18.[5]

It is undisputed that multiple Symphony House employees and residents filed complaints against Mr. Cappelli in the months before he was terminated. It is also undisputed that Mr. Cappelli received a written disciplinary warning for his altercation with a tenant and an annual performance review that found his performance on the "courtesy" and "stability" markers below average. In light of these undisputed facts, it is clear that the defendants have met their burden of production of a legitimate explanation for Mr. Cappelli's termination. The burden therefore shifts back to Mr. Cappelli to "present evidence from which a fact-finder could reasonably conclude that the [employer's] reason was pretextual and that the real reason was discrimination." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 317 (2d Cir. 1999).

Mr. Cappelli cannot meet this burden. At his deposition, Mr. Cappelli was asked, "Why do you think your [sic] discriminated against on the basis of your age?" Cappelli Dep. 60:15-17. Mr. Cappelli responded humbly: "Because I couldn't find another reason why they would want to

---

[5] The defendants argue that Mr. Cappelli is barred by the doctrine of collateral estoppel from arguing that the defendants lacked a legitimate, non-discriminatory reason to terminate him because that issue was decided when the arbitrator ruled that Mr. Cappelli "failed in his responsibility to cooperate with the Employer." Defs. Br. at 12. Mr. Cappelli asks the Court to give the arbitrator's decision no weight because Mr. Cappelli was not properly represented in front of the arbitrator, and because he was not permitted to present evidence of discrimination and retaliation. Opposition at 13-14. Because the Court does not need to rely on the arbitrator's opinion in order to find in favor of the defendants, it does not evaluate the preclusive effect of the arbitrator's decision or its weight.


terminate me." *Id.* at 60:18-19.  Asked as a follow-up question whether he has any evidence that it was on the basis of age, Mr. Cappelli could point to none.  *Id.* at 60:20-22.

Nor, apparently, was additional evidence adduced by Mr. Cappelli during discovery to support his claim that his age was cause of his termination, much less the but-for cause.  For Mr. Cappelli's opposition brief flatly asserts, without citation to the record or elaboration, that "the record reflects" that the defendants' reasons for terminating him are not legitimate and non-discriminatory.  Opposition at 13.  But as detailed above, the record contains significant evidence that the defendants were displeased with Mr. Cappelli's interpersonal skills and troubled by the numerous complaints lodged against him.  The Court understands that Mr. Cappelli believes that he "discharged his duties fully and completely," and that his written disciplinary warning was "unwarranted" because a tenant initiated the confrontation and he "followed all [required] procedures" in response.  Opposition at 2.  However, "[t]he mere fact that an employee disagrees with her employer's assessments of her work . . . cannot standing on its own show that her employer's asserted reason for termination was pretextual."  *Ricks v. Conde Nast Publ'n, Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000), *aff'd*, 6 F. App'x 74 (2d Cir. 2001); *see also Taylor v. Polygram Records*, No. 94 CIV. 7689 (CSH), 1999 WL 124456, at *10 (S.D.N.Y. March 8, 1999).

Scrutinizing the record for any factual support for Mr. Cappelli's position, the strongest evidence that the Court could identify was Mr. Paljevic's testimony that he temporarily assumed Mr. Cappelli's responsibilities when Mr. Cappelli was terminated.  Opposition at 5, 12 (citing Paljevic Dep. 11:22-24, 47:15-25, 48:1-7).  Mr. Cappelli argues that he has raised an inference of discrimination because when he was terminated his "duties and responsibilities were assigned to Mr. Paljevic, a substantially younger employee . . . ."  *Id.* at 12.  And, indeed, under the ADEA, an inference of discrimination may be created if the plaintiff is replaced with someone "substantially younger."  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

However, the bare fact that Mr. Paljevic, Mr. Cappelli's assistant, took over the job after his boss left is insufficient evidence to defeat summary judgment in this case. First, the Court notes that Mr. Paljevic is only 8 years younger than Mr. Cappelli, and was a member of the over-40 protected class at the time of Mr. Cappelli's termination. Second, although Symphony House offered Mr. Paljevic Mr. Cappelli's position, he refused the job, and only assumed Mr. Cappelli's duties until Symphony House hired Mr. Cappelli's permanent replacement. Paljevic Dep. 11:24, 47:15-48:5. The Court has no information as to the age of the person who ultimately took over Mr. Cappelli's position. The fact that Mr. Paljevic temporarily took over Mr. Cappelli's duties, or was even offered his job, provides insufficient basis for the Court to determine that there is a triable issue of fact regarding whether Mr. Cappelli's age was the but-for cause of his termination. Mr. Paljevic was Mr. Cappelli's assistant and a longtime employee of Symphony House: Mr. Paljevic would have been a natural candidate when considering possible replacements for Mr. Cappelli. *Caronia v. Hustedt Chevrolet*, No. 05 Civ. 05-3526 (DRH)(MLO), 2009 WL 909729, at *7 (E.D.N.Y. Apr. 1, 2009) (finding that there was no inference of age discrimination where plaintiff's assistant took over plaintiff's job). He would certainly have been the natural person to fill in the position until the defendants could hire someone for a permanent position.

The Court understands that "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law." *Holcomb v. Iona*, 521 F.3d 130, 141 (2d Cir. 2008) (internal quotation marks omitted). But in this case, as suggested by Mr. Cappelli's inability to articulate a basis for his age discrimination claim in his deposition, the record is devoid of evidence that would support an inference of intentional discrimination on the basis of Mr. Cappelli's age. The defendants' summary judgment motion is, therefore, granted with respect to Mr. Cappelli's age discrimination claims under the ADEA and the NYSHRL.

### C. Retaliation Claims under Title VII, the ADEA, and the NYSHRL

Mr. Cappelli alleges that the defendants retaliated against him in violation of Title VII, the ADEA, and the NYSHRL. Retaliation claims under Title VII, the ADEA, and the NYSHRL are analyzed under the *McDonnell Douglas* framework described above. *Gorzynski*, 596 F.3d at 110 (Title VII and ADEA); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843-44 (2d Cir. 2013) (NYSHRL). Under this framework, a plaintiff must first establish a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity; (2) the defendant was aware of that activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Zann Kwan*, 737 F.3d at 844. If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse employment action. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)). Where the defendant articulates such a reason, "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . retaliation." *Id.* Ultimately, "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, ─── U.S. ────, 133 S.Ct. 2517, 2534 (2013).

Here, the Court will simply assume, *arguendo*, that Mr. Cappelli can establish a *prima facie* case of retaliation, especially given the relatively close temporal proximity between the alleged protected conduct—Mr. Cappelli's filing of the EEOC charge on February 14, 2012—and the adverse employment action at issue—Mr. Cappelli's March 2, 2012 termination. *See Gorman–Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the activity was closely followed in time by the adverse [employment] action." (internal quotation marks omitted)).

However, for the reasons already stated with respect to Mr. Cappelli's age discrimination claims, the Court agrees with the defendants that they have articulated a legitimate, non-retaliatory reason for Mr. Cappelli's termination and that Mr. Cappelli has not demonstrated that this explanation was a pretext for retaliation.  The only evidence presented on the record supporting a finding of pretext is the temporal proximity of his complaint to his termination.  However, "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [the plaintiff's] burden to bring forward some evidence of pretext."  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  Accordingly, the defendants' motion for summary judgment is granted with respect to Mr. Cappelli's retaliation claims under Title VII, the ADEA, and the NYSHRL.

### D. NYCHRL Claims

Federal district courts have supplemental jurisdiction over state law claims "that are so related to" federal claims "that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Such jurisdiction, however, is "discretionary."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  A district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c).  "The NYCHRL 'explicitly requires an independent liberal construction analysis in all circumstances, an analysis that must be targeted to understanding and fulfilling what the statute characterizes as the [NYCHRL's] uniquely broad and remedial purposes, which go beyond those of counterpart state or federal civil rights laws.'"  *Armstrong v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB), 2015 WL 992737, at *5 (S.D.N.Y. Mar. 3, 2015) (internal quotation marks omitted) (quoting *Bennett v. Health Mgmt. Sys., Inc.*, 92 A .D.3d 29, 34 (N.Y. App. Div. 1st Dep't 2011)); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims

separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (citation and internal quotation marks omitted)). As a result, courts in this district frequently decline to exercise supplemental jurisdiction over NYCHRL claims. *See, e.g.*, *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393-94 (S.D.N.Y. 2013) (resolving NYSHRL claims together with Title VII claims, while declining to exercise supplemental jurisdiction over NYCHRL claims); *Brown v. City of New York*, No. 14 Civ. 2668 (PAE), 2014 WL 5394962, at *8 n. 8 (S.D.N.Y. Oct. 23, 2014) (same); *Guzman v. City of New York*, No. 13 Civ. 5445 (GHW), 2015 WL 1239988, at *13 (S.D.N.Y. Mar. 18, 2015) (same).

Given that the Court has dismissed of all of Mr. Cappelli's federal claims, the Court declines to exercise supplemental jurisdiction over Mr. Cappelli's claims under the NYCHRL.

**V.      Conclusion**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment with respect to Mr. Cappelli's federal and NYSHRL claims. The Court declines to exercise supplemental jurisdiction over Mr. Cappelli's claims under the NYCHRL.

The Clerk of Court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:  March 8, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge